## NELLIE WIGGINTON *v.* FRANK CLARK WIGGINTON

[No. 162, September Term, 1972.]

*Decided October 26, 1972.*

330

The cause was argued before ORTH, POWERS and CARTER, JJ.

*Andrew E. Greenwald,* with whom were *Karl G. Feissner, William L. Kaplan, Thomas P. Smith, Fred R. Joseph* and *Walter E. Laake, Jr.,* on the brief, for appellant.

No appearance for appellee.

*Amicus Curiae* brief filed by Prince George's County, *Walter H. Maloney, Jr., County Attorney* and *Michael J. McMahon, Associate County Attorney* on the brief.

ORTH, J., delivered the opinion of the Court.

I

There are three laws, codified as Code, Art. 24, §§ 10, 11 and 12, in this State which deal with the payment of

costs in court actions at law and in equity. This appeal from an order of 25 April 1972 of the Circuit Court for Prince George's County requires interpretation of §§ 10 and 11.[1]

As reenacted by Acts 1966, Ch. 591, § 10 of Art. 24 applies to the circuit courts of all of the counties of this State and to the civil common-law and equity courts of Baltimore City.[2] It provides in subsection (a) that the clerks of such courts "shall not docket any suit or issue process in any original suit, matter, proceeding or action at law until the plaintiff, or someone in his behalf, shall first deposit with the clerk of the court in which such suit, matter or proceeding shall be brought, toward the payment of the costs of the clerk and sheriff for which the plaintiff is liable" certain specified sums. It seems that it is concerned with the initiation of an action and the Court of Appeals has found that the legislative intent was probably twofold—"the discouraging of frivolous litigation and assuring payment of at least a part of the costs should the plaintiff be the losing party." *Glanville v. David Hairstylist*, 249 Md. 162, 166. The costs so

1. Code, Art. 24, § 12 (Acts 1961, ch. 573) authorizes the judges of the Circuit Court for Baltimore County to adopt and enforce rules requiring and regulating the prepayment of costs of cases at law or in equity docketed in said court, and prepayment of costs for the issuance of attachments, writs of fieri facias or execution on judgment. The judges are further authorized to adopt "any exceptions to said rules which they may deem appropriate in the interest of justice." Under this authority Rule 100 of the Third Judicial Circuit was adopted. Section a provides that no case shall be docketed until advance costs have been paid to the clerk in amounts provided by law and made the Rule applicable to the issuance of writs of attachment on judgment, fieri facias or execution on judgment. Section b sets out five cases to which the Rule does not apply. Section c states: "Prepayment of costs shall not be required in any case in which a plaintiff or petitioner executes an affidavit of indigency."

Whether § 12 of Art. 24 was repealed by implication upon the repeal and reenactment with amendments of § 10 of Art. 24 by Acts 1966, ch. 591, effective 1 June 1966, is not before us.

2. The original of what is now § 10 was enacted by Acts 1943, ch. 759. It applied to certain designated counties and to the civil common-law courts of Baltimore City. Acts 1966, ch. 591 added the equity courts of Baltimore City and eliminated the subsection which made the section applicable only in Baltimore City and specified counties. Ch. 591 also repealed Art. 26, § 31, subheading, "Costs for docketing cases in certain counties."

assured are sums specified in § 10 (a) for the clerk for docketing the suit, matter or proceeding—"the sum of $10 for any law case and $15 for any equity case," and the costs of the sheriff for issuing process in any original suit, matter, proceeding or action at law for which the plaintiff is liable, see Code, Art. 36, §§ 25, 25A, 25B, 26, 26A, 26B.

Section 11 of Art. 24, as amended by Acts 1968, ch. 184, also deals with the prepayment of costs for docketing a case at law or in equity, but is limited in its application to specified counties. "No case at law or in equity shall be docketed in the circuit court of Anne Arundel, Harford, Montgomery, Charles, St. Mary's, Somerset, Worcester and Prince George's counties * * * until the clerk of the circuit court shall have been paid the costs therefor; * * *."[3] In this respect, as to the counties specified, it covers the same ground as does § 10 without specifying the sum to be deposited. Section 11 does not include certain costs of the sheriff but does include other matters which § 10 does not. Section 11 further provides: "nor shall any attachment, writ of fieri facias or execution on judgment be issued until the costs therefor shall have been paid to the said clerk."

Each of § 10 and § 11 provides an exception. Section 10 (b) reads:

> "*Exception when petitioner not able to make deposit.*—Such deposits need not be made by any person, who by petition under oath filed in such suit, matter or proceeding or action at law, shall satisfy the judge thereof that the petitioner is not able to make such deposit, and whose coun-

---

3. The section also requires the prepayment of costs to the clerk of the circuit court "in the first and second judicial circuits" with respect to "any appeal from any people's court or magistrate court on any civil case" before such proceeding be docketed by the circuit court. Section 11 was repealed and reenacted with amendments by Acts 1972, ch. 181, § 21. As rewritten it contains four subsections. Subsection (c) reads: "No civil appeal from the District Court may be docketed in any circuit court or in the Baltimore City Court until the costs have been paid to the clerk of the appellate court pursuant to the Maryland Rules."

sel shall certify that the petitioner's said suit, matter, proceeding or action at law is meritorious, in which event the court shall pass an order allowing process to be issued and action taken without such deposit." [4]

Section 11 has this proviso:

"* * * provided, however, that the provisions of this section shall not apply to any indigent plaintiff, or to any person unable to pay the costs of docketing any said case or the issuance of any attachment, writ of fieri facias or execution on judgment as provided herein." [5]

In § 10 the legislature has made clear the procedure with respect to the required deposit. Process may be issued and "action taken" without prepayment of costs only by order of the court. The court shall pass such order, (1) upon the filing of a petition sufficient to satisfy the court that the petitioner is unable to make the required deposit, and (2) upon certification of the petitioner's counsel that the suit is meritorious.[6] Thus the test is whether the person desiring to have the case docketed and process issued is unable to make the required deposit. When the petition and certification have been properly submitted, the deposit may be excused upon the court being satisfied that the petitioner is unable to make it. This determination is a matter of judicial discretion.

---

4. Section 10 (c) provides that such deposits shall not be required to be made in proceedings in the nature of an appeal to the common-law courts of Baltimore City to have reviewed any decision of the Workmen's Compensation Commission and in appeals from judgments rendered by the People's Court. Acts 1972, ch. 181, § 21 deleted from subsection (c) that such deposits were not required in appeals from judgments rendered by the People's Court. See note 3, *supra*.

5. The exception in the statute as rewritten by Acts 1972, ch. 181, is set out in subsection (d): "This section does not apply to an indigent plaintiff, or to any person unable to pay the costs of docketing a case or of issuing an attachment, writ of fieri facias, or execution on judgment."

6. There are provisions in § 10 (b) making any wilful false swearing punishable as perjury under the criminal laws of Maryland.

Section 11 asserts baldly that its provisions "shall not apply to any indigent plaintiff, or to any person unable to pay" the prescribed costs.[7] It spells out no procedure for the determination of indigency or inability to pay. We believe that the legislature intended that the determination of whether a person was indigent or unable to pay the costs was within the sound discretion of the court. However, with respect to the docketing of a case, which is covered by § 10 as to all counties and Baltimore City and also by § 11 with respect to certain counties, we think that the clerk's costs for docketing cases at law and in equity in the circuit courts for the counties and in the civil common-law courts and equity courts of Baltimore City and the procedure under which exception is to be made to the prepayment requirement, are to be in accordance with the clear and specific provisions of § 10. We note that the title to ch. 591, Acts 1966, states that § 10 was repealed and reenacted with amendments "to provide that court costs be uniform throughout the State."[8] Therefore, a person seeking to have a case docketed at law or in equity without prepayment of costs must file a petition under oath sufficient to satisfy the judge that the petitioner is unable to make the required deposit and the petitioner's counsel must certify that the suit is meritorious.

## II

Nellie Wigginton presented to the Circuit Court for Prince George's County for docketing a bill of complaint

---

7. Section 10 does not use the word "indigent" but we feel that in the frame of reference of the two sections it was the legislative intent that there be no distinction between an "indigent plaintiff" and a person unable to pay the docketing costs. In any event, any distinction in this context would seem to be artificial and to no real purpose. "Indigent" means "lacking means of substance; impoverished; needy." The American Heritage Dictionary of the English Language.

8. The legislature may desire to reconsider Art. 24, §§ 10, 11 and 12 so that the matters now contained in the three statutes could be covered in one comprehensive law. This could do much to further the uniformity throughout the State as to payment of costs which the legislature sought.

for a divorce a vinculo matrimonii against her husband, Frank Clark Wigginton, address unknown. She submitted a "Petition to Waive Payment of Fees and Costs," alleging that she was without sufficient funds to pay "the filing fees, sheriff fees, cost of publication and other costs which may be involved in this litigation," that she was a recipient of Medical Assistance and that she had been assigned counsel under the Maryland Legal Services Program (Judicare). She asserted that other than her personal clothing and effects she had no assets, and unless granted leave to file the action without payment of fees and costs, "she will be unable to present what she feels is meritorious litigation to the Court." She attached a financial statement under oath showing income of $200 from Federal Aid to Dependent Children and an amount of $108 in United States Department of Agriculture Food Stamps. Whether this is weekly or monthly income is not indicated. The expenses, again with no indication of whether weekly or monthly, are listed as rent—$180; food—$100; light, gas, telephone $28. We view the income and expenses as being on a monthly basis. The liabilities are shown as $700 owed to Hecht Co. It appears from the record before us that the final action taken by the Master for Domestic Relations Causes, Circuit Court for Prince George's County, was set forth in a Memorandum dated 11 April 1972 by him to Mrs. Wigginton's counsel:

> "The Petition for Waiving Pre-Payment of Court Costs has come to the Master for review and recommendation, and I am returning the file herewith as it is not clear why the plaintiff is not employed. She states that she is an indigent and it occurs to me that if she had a job she might not be an indigent.
>
> It is common knowledge that a great segment of the population would perhaps be indigent if they did not work."

Counsel excepted. Praying that his exceptions be sustained, he claimed:

"The finding of indigency has already been made by the fact that the Plaintiff is receiving assistance from Federal Aid to Dependent Children and food stamps from the United States Department of Agriculture. The Plaintiff also has been granted a Medical Assistance Card by the Government which is No. 16035337340, and has been assigned Counsel under the Maryland Legal Services Program (Judicare)."

He asserted: "To deny the Plaintiff the right to have her case filed with prepayment of costs waived defeats the whole purpose of the Judicare Program, and would appear to be in violation of the Supreme Court's Mandate in *Boddie v. Connecticut*, 91 S. Ct. 780." On 25 April 1972, the Circuit Court for Prince George's County passed an order as follows:

"Upon consideration of the Report of the Master, dated the 11th day of April, 1972, and the Exceptions filed thereto, it is, by the Circuit Court for Prince George's County, Maryland, Sitting in Equity, this 25th day of April 1972,

ORDERED, That the Exceptions be, and the same hereby are overruled, and it is further

ORDERED, That the Clerk shall not receive the case of *Wigginton v. Wigginton* for filing, waiving payment of fees and costs."

### III

We first observe that it is patent that appellant in seeking to have her case docketed without making the deposit did not invoke the statutory exceptions available. Rather she relied on the holding in *Boddie v. Connecticut*, 401 U. S. 371. In *Boddie* the Court assumed, as there it had to, "the truth of the undisputed allegations made by the appellants." It pointed out:

"There is no dispute as to the inability of the named appellants in the present case to pay

either the court fees required by statute or the cost incurred for the service of process. The affidavits in the record establish that appellants' welfare income in each instance barely suffices to meet the costs of the daily essentials of life and includes no allotment that could be budgeted for the expense to gain access to the courts in order to obtain a divorce. Also undisputed is appellants' 'good faith' in seeking a divorce." At 372-373.

The holding in *Boddie* was precise:

"Our conclusion is that, given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages." At 374.

And the Court made clear that its holding was limited:

"In concluding that the Due Process Clause of the Fourteenth Amendment requires that these appellants be afforded an opportunity to go into court to obtain a divorce, we wish to reemphasize that we go no further than necessary to dispose of the case before us, a case where the *bona fides* of both appellants' indigency and desire for divorce are here beyond dispute. We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship." At 382-383.

The statutes of this State on the subject are in nowise at odds with *Boddie*. Under them if a person establishes that he is unable to pay the required costs and his counsel certifies that the cause is meritorious, he obtains his day in court. Certainly *Boddie* mandated no more.

We cannot say on the record before us that the judge below abused his judicial discretion in not being satisfied by appellant's petition that she was not able to make the deposit. He was not bound by the findings of governmental agencies, whatever those findings may have been. Nor did it necessarily follow that because appellant was receiving assistance from Federal Aid to Dependent Children and food stamps from the United States Department of Agriculture and granted a Medical Assistance Card and assigned counsel by Judicare that she was in fact unable to make the deposit. The Master's unanswered question as to why appellant was not employed was important to a determination of her ability to pay. (According to the Bill of Complaint there were two children, Erie born 28 May 1956 and Daniel born 29 July 1959). We understand from oral argument before us that appellant and counsel were tendered an opportunity to appear before the Master to explain why she was not employed and to offer such other matters pertaining to her inability to pay as they desired, but refused, preferring to rely on the petition. We think it a perfectly proper procedure for the court, itself or through a Master, to conduct such hearing as may provide relevant and material data on the issue. And we observe that counsel did not comply with the mandate of Code, Art. 24, § 10 (b) that he certify that the suit was meritorious. On the record before us we find no error in the court refusing to pass an order allowing action to be taken without the deposit.

Our holding does not constitute a final determination that appellant may not file her suit without prepayment of costs. We note that she may still invoke the statutory exceptions, and if, upon compliance with the statutory requirements, she satisfies the judge below that she is not

able to make the deposit, an order allowing action to be taken without such deposit would be proper.

*Order of 25 April 1972 affirmed.*[9]

9. By order of 15 May 1972 this Court ordered that its Clerk accept the appeal without the payment of appeal costs.